UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE: PAUL BRIAN MANKE

        Debtor.

_____

JAMES SHULL,

        Appellant,

v.                            Case No: 2:18-cv-477-FtM-99
                               Bankr. No. 9:15-BK-05370-FMD
                                Adv. No. 9:16-ap-00269-FMD

PAUL BRIAN MANKE,

        Appellee.

_____

**OPINION AND ORDER**

This matter comes before the District Court on appeal of the Bankruptcy Court's Order Granting Defendant's Motion for Nonsuit (Doc. #5-10.)[1] This Order granted a directed verdict/nonsuit in favor of appellee-defendant/debtor Paul Brian Manke and against appellant-plaintiff/creditor James Shull. Appellant filed an initial Brief (Doc. #11) on October 5, 2018, appellee filed an Answer Brief (Doc. #12) on October 25, 2018, and appellant filed

---

[1] The Court will hereinafter cite documents filed with the District Court as "Doc.", and documents filed in the Bankruptcy case as "Bankr. Doc.". Copies of the relevant documents were included in the record transmitted by the Bankruptcy Court.

a Reply Brief (Doc. #13) on November 13, 2018. For the reasons set forth below, the Bankruptcy Court is affirmed.

## I. Relevant Bankruptcy Court Proceedings

Debtor Paul Brian Manke (Manke or debtor) received a discharge in his Chapter 7 bankruptcy case, but did not list James Shull (Shull) as a creditor. On November 27, 2016, Shull filed an amended Adversary Complaint for Fraud (Doc. #5-2) against Manke. In the amended Adversary Complaint Shull "ask[ed] this Court to find that the Debtor fraudulently induced the Creditor to pay for construction work on a certain pool that the Debtor knew he would not be able to complete [and] prohibit the discharge of this debt. . . ." (Doc. #5-2, p. 9.)

The Bankruptcy Court conducted a bench trial on March 23, 2018, and heard testimony from Shull and Manke. At the conclusion of the testimony in plaintiff's case-in-chief, Manke moved for a directed verdict, which was construed as a motion for non-suit since it was a non-jury trial. (Doc. #6, pp. 43, 46.) The Bankruptcy Court granted Manke's motion for directed verdict/nonsuit. (Docs. ##5-10; #6, pp. 44-49.) Shull filed a Motion for Reconsideration (Doc. #5-11), which was denied by the Bankruptcy Court (Doc. #5-12). As the Order Denying Motion for Reconsideration stated, defendant's motion for directed verdict in a non-jury trial is actually a motion for judgment on partial

findings under Federal Rule of Civil Procedure 52(c).[2] (Doc. #5-12, p. 4.)

**II.    Issues on Appeal and Standards of Review**

Appellant Shull raises two issues in this appeal: (1) Whether the Bankruptcy Court erred when it found that Manke and John Varkis did not operate a partnership such that the fraudulent actions of Varkis could be imputed to Manke; and (2) whether the Bankruptcy Court erred when it held that Varkis was not an agent of Manke such that the fraudulent actions of Varkis could be imputed to Manke.  (Doc. #11.)

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. 28 U.S.C. § 158(a); In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994).  "In addressing a Rule 52(c) motion, the court does not view the evidence in the light most favorable to the nonmoving party, as it would in [ ] a Rule 50(a) motion for judgment as a matter of law; instead, it exercises its role as factfinder." United States v. $242,484.00, 389 F.3d 1149, 1172 (11th Cir. 2004) (en banc).  The legal conclusions of the bankruptcy court are reviewed *de novo*, while findings of fact are reviewed for clear error.  In re Globe Mfg. Corp., 567 F.3d 1291,

---

[2] A Rule 52(c) motion for judgment on partial findings presents a mixed question of law and fact. Veale v. Citibank, F.S.B., 85 F.3d 577, 579 (11th Cir. 1996).

1296 (11th Cir. 2009). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." Crawford v. W. Electric Co., Inc., 745 F.2d 1373, 1378 (11th Cir. 1984)(citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)); In re Walker, 515 F.3d 1204, 1212 (11th Cir. 2008).

### III. Discussion

Shull contends that Manke owed him $28,000, and that this debt was not dischargeable under § 523(a)(2)(A) of the Bankruptcy Code. A discharge of debts in bankruptcy does not cover any debt for money or services "to the extent [the debt was] obtained by -- (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To prove that a debt is nondischargeable under § 523(a)(2)(A), a creditor must show that "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." In re Bilzerian, 153 F.3d 1278, 1281 (11th Cir. 1998); In Re Denise Roberts-Dude, 597 F. App'x 615, 617 (11th Cir. 2015). An objecting creditor has the burden of proving each of these elements by a preponderance of the evidence. In re Griffith, 206 F.3d 1389, 1396 (11th Cir. 2000)

(en banc). This appeal involves only the first element under § 523(a)(2)(A). The Court remains "[m]indful of our obligation to construe strictly exceptions to discharge in order to give effect to the fresh start policy of the Bankruptcy Code." In re Walker, 48 F.3d 1161, 1164–65 (11th Cir. 1995).

**A. The Agreement and Its Non-Performance**

The evidence at trial established that on or about July 21, 2014 Shull entered into an Agreement (Doc. #5-5, Exh. 3) with Venetian Pools & Spa, Inc. (VPSI), a Florida corporation. The Agreement was signed by Shull and by John Varkis on behalf of VPSI. The Agreement provided for VPSI to install a 12' by 24' pool with a 6' by 6' spa for $40,000, to be paid in performance-based draws after an initial down payment. (Id.) Shull made the down payment of $8,000 by direct deposit into an account at the Chase Bank, as directed by Varkis. (Doc. #6, p. 23.)

Little work was done thereafter on the pool installation. On November 19, 2014, Shull received an email (Doc. #12, Trial Exh. 2) from Varkis requesting that Shull pay the first two draw amounts for the excavation phase and the installation of the pool shell phase. Although no meaningful work had yet been started, Varkis stated in the email that he would have that work and inspections completed by the end of the week. (Id.) The email requested that Shull pay these first two draws to an account at Chase Bank, and included information about what purported to be the VPSI account

at Chase Bank. (Id.; Doc. #6, p. 23.) While Shull was a little nervous, he paid the $20,000 as Varkis requested before the work was barely started. (Doc. #6, pp. 20, 23.) None of the work described by Varkis was performed, and the phases were never started or completed by VPSI. (Id. at 15-16, 19, 21.)

**B. Manke's Non-Involvement in Agreement and Its Performance**

The evidence at trial was undisputed that Manke did not personally make any statements at all to Shull, much less a false or fraudulent statement to induce him to enter into the contract or to make any payment. Shull testified that his July 2014, discussions were with Varkis (Doc. #6, p. 16), who he believed was the person in charge of the contract and who told him that he owned 90 percent of the company (id. at 16, 31-32). Shull testified he did not negotiate any terms or conditions of the contract with Manke, and did not even know Manke existed at the time he entered into the contract. (Id., pp. 31, 32.) Shull further testified he had never spoken to or seen Manke (id., p. 29), and never tried to email Manke (id. at 32). Shull testified he had no evidence that Manke personally benefitted from the Agreement. (Id., p. 33.) Manke agreed that he did not have any communication with Shull. (Id., p. 38.)

**C. Existence of False Statement**

The trial record contains no direct evidence as to what statements were made by Varkis to Shull at and before the execution

of the Agreement.  The only evidence of false statements is the November, 2014 email from Varkis which promised the completion of certain work by the end of the week.  Varkis obtained $20,000 as a result of these statements, but no work was performed.  Under the circumstances, this evidence was sufficient to justify the inference that material false statements were made by Varkis.

**D. Imputing Varkis' False Statements to Manke**

The existence of false statements by Varkis is not alone sufficient to satisfy the first element of § 523(a)(2)(A) as to Manke.  A debt is excepted from discharge not only when the debtor engages in fraud, but when actual fraud is imputed to the debtor. In re Villa, 261 F.3d 1148, 1151 (11th Cir. 2001).  Thus, "when actual fraud has been committed by someone other than the debtor, the issue is whether the debtor may be held liable for the other's fraud so as to render the resulting debt nondischargeable by the debtor."  Villa, 261 F.3d at 1151.  In Strang v. Bradner, 114 U.S. 555, 561 (1885), a pre-Bankruptcy Code case, the Supreme Court held that a co-partner's fraud was imputed to debtors based on common law partnership and agency principles, and precluded discharge of a debt.  The Eleventh Circuit has held that "the fraud of one partner can be imputed to another partner who had no actual knowledge of it."  In re Ledford, 976 F.2d 1556, 1561-62 (11th Cir. 1992).

Here, Shull asserts that the false statements by Varkis are imputed to Manke either because Manke and Varkis had formed a partnership which utilized a corporation to perform partnership business functions, or because Varkis was Manke's agent in connection with the pool installation Agreement. The Court discusses each position in turn.

*(1) Alleged Partnership Between Manke and Varkis*

In Florida, "[a] partnership is an entity distinct from its partners." Fla. Stat. § 620.8201. A "partnership" is defined as "the association of two or more persons to carry on as coowners a business for profit." Fla. Stat. § 620.8202(1). As one Florida case stated:

> A partnership is only established when both parties contribute to the capital or labor of the business, have a mutuality of interest in both profits and losses, and agree to share in the assets and liabilities of the business. [ ] To establish a partnership, there must be a community of interest in performance of a common purpose, joint control or right of control, joint propriety of interest in subject matter, right to share in the profits, and duty to share in any losses which may be sustained. [ ] These requirements are strictly construed and the absence of even one is fatal to the finding of a partnership.

Dreyfuss v. Dreyfuss, 701 So. 2d 437, 439 (Fla. 3d DCA 1997)(citations omitted). See also Williams v. Obstfeld, 314 F.3d 1270, 1275 (11th Cir. 2002) ("Under Florida law, a joint venture is a form of partnership."). The Florida statute specifically

provides that such an association results in a partnership "whether or not the persons intend to form a partnership."  Fla. Stat. § 620.8202(1).  "In other words, formation of a partnership does not require a showing that the parties subjectively intended to create a partnership, only that they intended to do the things that constitute a partnership."  Rafael J. Roca, P.A. v. Lytal & Reiter, Clark, Roca, Fountain & Williams, 856 So. 2d 1, 4 (Fla. 4th DCA 2003).

If a partnership is formed, "[e]ach partner is an agent of the partnership for the purpose of its business."  Fla. Stat. § 620.8301.  Additionally, if a partnership is formed, the fact that the partnership used a corporation to carry out the business of the partnership "does not change the essential nature of the relationship."  Donahue v. Davis, 68 So. 2d 163, 171 (Fla. 1953).  See also Sheridan Healthcorp, Inc. v. Amko, 993 So. 2d 167, 170 (Fla. 4th DCA 2008).  On the other hand, the mere fact that Manke and Varkis were involved in a corporate entity does not establish that there was a partnership between them.  Burger v. Hartley, 896 F. Supp. 2d 1157, 1168 (S.D. Fla. 2012).

It is certainly true, as the Bankruptcy Court stated, that "Venetian Pools is not a partnership."  (Doc. #5-12, p. 8.)  As a corporation, an "association formed under a statute", it is expressly excluded from the definition of partnership.  Fla. Stat. § 620.8202(2).  This does not end the inquiry, however, because a

partnership could carry on business using a corporate entity. Donahue, 68 So. 2d at 171. The Bankruptcy Court found, however, that there was no basis to impute Varkis' fraud to Manke (Doc. #5-12, p. 4), and specifically no basis to recognize a partnership between Manke and Varkis (id., pp. 9-11.)

The relevant evidence at trial was as follows: Manke testified that he took over the VPSI business in 2012 when his father passed away. (Doc. #6, p. 37.) Manke obtained his contractor's license and kept the business going. (Id.) Until about September 2014, Manke owned 90% of the company and Varkis owned 10%. (Id., pp. 34-35.)[3] Both Manke and Varkis drew salaries from the company, and while they never got to the point where there was profit to split, that was the goal. (Id., p. 37.) Manke acknowledged that Varkis was his "business partner," and testified both of them invested either time or money into the business. (Id., pp. 36-37.)

In July 2014, Shull entered into the Agreement with the corporation, VPSI. At the time the contract was entered, Varkis told Shull he was a 90 percent owner of VPSI. Given the date of the Agreement, it is more likely that Manke was the 90% shareholder and Varkis owned 10% of the corporation.

---

[3] Footnote 2 of the Order Denying Motion For Reconsideration (Doc. #5-12, p. 2) is factually incorrect. See Doc. #6, pp. 34-35.

In about September, 2014, Manke and Varkis flipped their ownership percentages of the corporation. Varkis became the owner of 90% and Manke owned 10% of VPSI. (Id., pp. 34-35.) At that time, Varkis became the primary qualifying agent, while Manke used his contractor's license to pull permits and had the final authority on building code issues. (Id., pp. 35-36.) Manke testified he made the ownership reduction because he had intended to start a remodeling company with a different contractor's license he intended to obtain. (Id., pp. 41-42.)

As to the Shull job, Manke did not have any communication with Shull, and never went to the job site. (Id., p. 38.) Shull paid his $8,000 down payment to a Chase Account in the name of Avion Holdings, LLC, which was owned by Varkis and had nothing to do with VPSI. (Id., p. 38.) Manke did not have any ownership of or interest in Avion Holdings, LLC., or any access to that account. (Id.) Manke does not know what happened to the funds after they were deposited in the Avion Holdings account. (Id. at 39.) Manke did not know that Varkis had given these directions to Shull, and never knew about or gave permission to make the payment in that fashion. (Id., p. 39.) VPSI had a different account for receipt of such funds. (Id.) Manke was not the signer on checks for the Venetian account. (Id., p. 42.)

The Bankruptcy Court found there was no basis to find a partnership existed between Varkis and Manke. While the existence

and use of VPSI as a corporate entity does not preclude the possibility of a partnership, the facts clearly do not support the existence of such a partnership.

Manke's affirmation to the characterization of Varkis as a "business partner" with whom he hoped to eventually share profits does not establish the existence of a partnership in this case. That characterization described their relationship as shareholders in a very small corporation, not literally a partnership recognized under Florida law.  Other than the corporate entity, Manke and Varkis had no business relationship together either generally or in connection with the Shull pool and spa installation.  Manke had literally no involvement in the Shull Agreement, was not aware of its existence, did not receive any money from the Shull Agreement, and had no involvement with the bank accounts utilized by Varkis in connection with that Agreement.  Varkis did not represent himself to Shull as a partner, but rather as an owner of the corporate entity.  All of the evidence shows that Manke and Varkis conducted business through the corporate entity, not from any actual partnership.  As noted in Dreyfuss, the absence of any of the partnership factors is fatal to the finding of a partnership. The Bankruptcy Court did not clearly err in its factual findings, and the legal basis to reject the partnership argument is sound. The Bankruptcy Court is affirmed on this issue.

### *(2) Agency Relationship Between Manke and Varkis*

Appellant further argues that the Bankruptcy Court erred when it found that Varkis was not the agent of Manke in connection with the Agreement. Appellant argues that an actual agency relationship existed because Manke was the President of the company and the sole license holder of the company. As such, appellant argues that Manke had the duty to control all aspects of the contracting activities of the company. Alternatively, appellant asserts that there was an apparent agency relationship between Manke and Varkis in connection with the Agreement. The Court finds no error in the refusal of the Bankruptcy Court to find an agency relationship.

The elements of an actual agency relationship are "'(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent.'" Belik v. Carlson Travel Group, Inc., 864 F. Supp. 2d 1302, 1310 (S.D. Fla. 2011)(citations omitted). None of these requirements are satisfied in this case.

As to appellant's second argument, "an apparent agency exists only if each of three elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." Mobil Oil Corp. v. Bransford,

648 So. 2d 119, 121 (Fla. 1995). There was no evidence of an apparent agency in this case because the testimony was undisputed that Shull did not know of Manke's existence, Manke made no representation to Shull, and Shull did not rely upon anything Manke said or did.

Appellant argues that he "can find no legal authority to support the trial court's ruling that Appellee's positions of control in his company are insufficient to establish an agency relationship, and no legal authority was offered by the Appellee either. Thus, the Appellant believes the trial court erred in not finding an actual agency relationship." (Doc. #11, p. 16.) The Eleventh Circuit found that "fraud liabilities . . . resulting from the actions of a corporate employee are not ordinarily imputed to the principals or shareholders of the corporation and rendered nondischargeable under § 523(a)(2)(A)." In re Villa, 261 F.3d 1148, 1153 (11th Cir. 2001). Relying on In re Villa, 261 F.3d 1148 (11th Cir. 2001), the Bankruptcy Court noted that "[i]nsulation from personal liability is one advantage to the corporate structure", "unlike a partnership, where the wrongful acts of one partner may be imputed to another partner even if the partner was not personally involved." (Doc. #5-12, p. 6.)

### E. Sanctions

In his response, appellee asks that the Court impose sanctions for the filing of the frivolous appeal, and to remand the case for

further proceedings.  The Court declines to impose sanctions, and will defer any request for sanctions to the Bankruptcy Court where a Motion for Sanctions (Bankr. Doc. #56) is pending.

Accordingly, it is hereby

**ORDERED:**

The Order Granting Defendant's Motion for Nonsuit (Doc. #5-10) and the Order Denying Motion for Reconsideration (Doc. #5-12) are **affirmed**.  The request for sanctions is remanded to the Bankruptcy Court.  The Clerk shall enter judgment accordingly, transmit a copy of this Opinion and Order to the Bankruptcy Court, and close the appeal.

**DONE and ORDERED** at Fort Myers, Florida, this ___19th___ day of December, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Clerk, Bankr. Ct.
Counsel of Record